```
                    UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DISTRICT OF MISSOURI
                          CENTRAL DIVISION
```

**UNITED STATES OF AMERICA,**           )     No. 09-04053-01-CR-C-NKL
                                        )
            Plaintiff,                  )     Conspiracy to Violate the
                                        )     International Emergency
      v.                                )     Economic Powers Act,
                                        )     18 U.S.C. § 371,
**SHAKIR ABDUL-KAFI AL ANI HAMOODI**    )     50 U.S.C. § 1701(a)(1),
a/k/a Abu Omeis                         )     31 C.F.R. §§ 575.210
a/k/a Shakir Hamoodi,                   )     and 575.211
                                        )
            Defendant.                  )

## INFORMATION

The United States charges that:

**A.   Background of the Conspiracy.**

 1.   At all times material to the Information:

(a) The President of the United States of America, by virtue of the International Emergency Economic Powers Act (Title 50, United States Code, Sections 1701, *et seq*.) and other authorities was granted authority to deal with unusual and extraordinary threats to the national security, foreign policy and economy of the United States.

(b) In Executive Order Number 12,722, signed on August 2, 1990, President George W.H. Bush declared that "the policies and actions of the Government of Iraq constitute an unusual and extraordinary threat to the national security and foreign policy of the United States," and declared "a national emergency to deal with

that threat." On August 9, 1990, following the passage of United Nations Security Council Resolution 661 (which dealt, in part, with sanctions placed on Iraq) on August 6, 1990, the President issued Executive Order Number 12,724. Executive Orders 12,722 and 12,724 prohibited the transfer of funds or other financial or economic resources by anyone in the United States to any person in Iraq, directly or indirectly. Further, Executive Orders 12,722 and 12,724 specifically prohibited "[a]ny transaction by any United States person that evades or avoids, or has the purpose of evading or avoiding, any of the prohibitions set forth in this order."

(c) From in or about 1990 through all times relevant to this Information, the President continued, on an annual basis, the national emergency with respect to Iraq. These successive Executive Orders authorized the Secretary of the Treasury, in consultation with the Secretary of State, "to take such actions, including the promulgation of rules and regulations, as may be necessary to carry out the purpose" of the Executive Orders.

(d) Pursuant to this authority, OFAC, the Office of Foreign Asset Control, which is the office within the Department of Treasury charged with the responsibility of administering sanctions against foreign persons and entities, promulgated regulations to implement the Executive Orders. The relevant regulations are located in Part 575, specifically 31 C.F.R. §§ 575.210 and 575.211, of Title 31 of the Code of Federal Regulations, and state, in part:

2

1) [N]o U.S. person may commit or transfer, directly or indirectly, funds or other financial or economic resources to the Government of Iraq or any person in Iraq.

2) [A]ny transaction that has the purpose of, or which has the effect of, evading or avoiding, or which facilitates the evasion or avoidance of, any of the prohibitions set forth in this subpart is hereby prohibited. Any attempt to violate the prohibitions set forth in this part is hereby prohibited. Any conspiracy formed for the purpose of engaging in transactions prohibited by this part is hereby prohibited.

(e) Defendant **SHAKIR HAMOODI** (a/k/a Abu Omeis) was a United States person at all times relevant to this Information, having immigrated to the United States in 1985.

(f) Defendant **SHAKIR HAMOODI**, whose complete name is Shakir Abdul-Kafi Al Ani Hamoodi (a/k/a Abu Omeis, hereafter "**SHAKIR HAMOODI**") did not have authorization from the United States to transfer, directly or indirectly, funds or other financial or economic resources to the Government of Iraq or any person in Iraq, which was prohibited under the regulations in Part 575 of Title 31 of the Code of Federal Regulations.

(g) Between 1985 and April 2003, **SHAKIR HAMOODI** resided in the State of Missouri.

(h) Beginning no later than 1994, and continuing until about April 2003, within the Western District of Missouri, the State of Michigan, the Country of Jordan, and elsewhere, **SHAKIR HAMOODI** did knowingly and willfully combine, conspire, confederate and agree with Co-conspirator #1, Co-conspirator #2, Organization

3

#1, and other persons, both known and unknown to the United States, to commit offenses against the United States, that is, a willful violation of the Part 575 of Title 31 of the Code of Federal Regulations and the International Emergency Economic Powers Act, Title 50, U.S.C., Sections 1701, *et seq*.

**B.    Manner and Means of the Conspiracy**.

2.    Beginning no later than 1994, **SHAKIR HAMOODI** disagreed with the President's Executive Orders that resulted in sanctions against Iraq.

3.    No later than 1994, **SHAKIR HAMOODI** and Co-conspirator #1, who was at all times relevant to the Information a person inside Iraq, agreed to violate the sanctions by engaging in a scheme to transfer, directly and indirectly, funds or other financial or economic resources into the Country of Iraq.

4.    No later than 1994, and continuing through April 2003, **SHAKIR HAMOODI** collected funds from persons of Iraqi descent who were living in the United States.

5.    **SHAKIR HAMOODI** sent the funds via wire to the corporate account of a wholesale produce company (hereafter "the company") at a bank in the Country of Jordan.

6.    Co-conspirator #1 worked as a bookkeeper for the company at their offices in Baghdad, Iraq, at all times relevant to the Information.

4

7. Once the money was in the company's Jordan-based account, **SHAKIR HAMOODI** and Co-conspirator #1 agreed, Co-conspirator #1 would notify his contacts at the company that a specific sum of money had been deposited into the company's business account in Jordan.

8. Thereafter, while in Baghdad, Iraq, Co-conspirator #1 would withdraw the same amount of funds from an Iraq-based bank account held by the same company.

9. Co-conspirator #1 and **SHAKIR HAMOODI** further agreed that Co-conspirator #1 would distribute the funds to the intended recipients in Iraq on an as-needed basis.

10. At no time did **SHAKIR HAMOODI** or Co-conspirator #1 apply to the United States Department of the Treasury for a license to send funds, goods, food, medicine or any other item into Iraq, directly or indirectly.

11. Between approximately 1994 and 1998, on approximately a monthly basis, **SHAKIR HAMOODI** wired the funds from a United States bank to the business account associated with the company at the bank in Jordan, with the intent that they would later arrive in the Country of Iraq.

12. **SHAKIR HAMOODI** kept records of these transfers that sometimes included how the United States-based senders wanted the money spent in Iraq, and **SHAKIR HAMOODI** further sent faxes to Co-conspirator #1 with specific instructions about how the funds

5

should be distributed within Iraq, including the amounts intended for each recipient and, in some instances, how those funds were to be used and the timing of the distribution of the funds.

13. Between 1998 and 1999, the exact dates being unknown to the United States, **SHAKIR HAMOODI** and Co-conspirator #2 discussed ways to send funds to persons inside Iraq in contravention of the Iraq sanctions.

14. Between 1998 and 1999, **SHAKIR HAMOODI** and Co-conspirator #2 began combining the funds **SHAKIR HAMOODI** was receiving from persons of Iraqi descent in the United States with funds collected as charitable donations by Organization #1.

15. Between 1998 and 1999, and continuing through April 2003, on at least a monthly basis, the funds collected by **SHAKIR HAMOODI** were combined with Organization #1's donations, whereupon Co-conspirator #2 and Organization #1 would send the funds indirectly into the country of Iraq, and Co-conspirator #1 continued to receive the funds for distribution into Iraq.

**C. Overt Acts.**

16. Between 1994 and April 2003, **SHAKIR HAMOODI**, on multiple occasions, on approximately a monthly basis, did wire or cause to be wired funds from banks in the United States to a bank in the Country of Jordan, with the specific intent that Co-conspirator #1 would later receive these funds in the Country of Iraq, and Co-conspirator #1 did, in fact, receive the funds in the Country of

Iraq, and the total amount of these wired funds was $270,000. [Conspiracy to violate the International Emergency Economic Powers Act, 18 U.S.C. §371, 50 U.S.C. §1701(a)(1), 31 C.F.R. §§ 575.210 and 575.211.]

                    **Matt J. Whitworth**
                    United States Attorney

By          /S/

                    **Anthony P. Gonzalez**
                    Assistant United States Attorney

By          /S/

                    **J. Daniel Stewart**
                    Assistant United States Attorney

By          /S/

                    **S. Elisa Poteat**
                    Trial Attorney
                    Counterterrorism Section
                    National Security Division
                    U.S. Department of Justice