1             IN THE UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF MISSOURI
2                  CENTRAL DIVISION

3

  UNITED STATES OF AMERICA,     )
4                       )
             Plaintiff,     )  No. 09-04053-01-CR-C-NKL
5                       )  May 16, 2012
          V.             )  Jefferson City, Missouri
6                       )  CRIMINAL
  SHAKIR ABDUL-KAFI AL ANI     )
7  HAMOODI,                )
                       )
8          Defendant.     )

9

10

         TRANSCRIPT OF SENTENCING PROCEEDINGS
11

      BEFORE THE HONORABLE NANETTE K. LAUGHREY
12         UNITED STATES DISTRICT JUDGE

13    Proceedings recorded by electronic stenography
         Transcript produced by computer
14

15                  APPEARANCES

16

  For Plaintiff:       MR. GARRETT M. HEENAN
17                U.S. Department of Justice
                950 Pennsylvania Avenue, NW
18                Washington, DC 20530

19                MR. ANTHONY GONZALEZ
                Assistant U.S. Attorney
20                80 Lafayette Street, Suite 2100
                Jefferson City, MO 65101
21

  For Defendant:       MR. JAMES R. HOBBS
22                 Wyrsch, Hobbs & Mirakian P.C.
                1000 Walnut Street, Suite 1600
23                Kansas City, MO 64106-2122

24

25

              Kathleen M. Wirt, RDR, CRR
             United States Court Reporter
    400 E. 9th Street, Suite 7452 * Kansas City, MO 64106
                  816 512 5608

Case 2:09-cr-04053-NKL  Document 29  Filed 06/11/12  Page 1 of 34

1              MAY 16, 2012

2                   - - -

3          THE COURT:  This is the matter of the United States

4   versus Shakir Abdul-Kafi Al Ani Hamoodi, Case No. 09-4053.  Is

5   the government ready to proceed?

6          MR. HEENAN:  Yes, Your Honor.

7          THE COURT:  And is the defendant ready to proceed?

8          MR. HOBBS:  Yes, Your Honor.

9          THE COURT:  Has the government had an opportunity to

10  review the presentence report and, if so, are there any

11  objections to it?

12         MR. HEENAN:  Your Honor, the government has had an

13  opportunity to review the presentence report, and it has no

14  objections to what's contained in the report.

15         THE COURT:  And for the defendant?

16         MR. HOBBS:  We've also reviewed the report, we've

17  reviewed it with Mr. Hamoodi.  Also preliminarily, Judge, in

18  our sentencing memorandum, we had raised an objection as to the

19  two-level role cited in paragraph 68 (sic).  At this time we

20  are withdrawing that objection and we are prepared to proceed

21  in whatever fashion the court deems appropriate.

22         THE COURT:  Thank you, Mr. Hobbs.  I will note that

23  and, therefore, adopt the presentence report as my findings of

24  fact and conclusions of law.  The total offense level is a 25,

25  the Criminal History Category is a I, and the range is 57 to 60

1  months, because that is the statutory maximum.  All right.

2         For the government, is there anything further before

3  the court proceeds?

4         MR. HEENAN:  Yes, Your Honor.  The government -- as

5  I believe the court is aware, the government filed last week a

6  motion for a downward departure pursuant to 5K1.1 based on the

7  fact that Mr. Hamoodi has provided substantial assistance to

8  the government in terms of its investigation and/or prosecution

9  of other cases.  The government has made a recommendation for a

10 downward departure in its motion that it filed, and I would ask

11 that the court grant the motion that the government has filed

12 for a downward departure.

13        THE COURT:  All right.  I will take into account the

14 record previously made in this matter and will grant the motion

15 for downward departure that has been filed by the government.

16 So I think at this point it's appropriate to talk generally

17 about what an appropriate sentence would be.  I do want for the

18 record to note that I have reviewed the letters that have been

19 sent by different people in support of Mr. Hamoodi, and I

20 believe there are some people that might like to speak?

21        MR. HOBBS:  Yes, Judge, thank you.  We have three

22 people who would like to speak.  The first is Lamees Shakir

23 Abdul-Kafi; and with leave of the court, if she could come

24 first.  And we have two other brief statements:  One from Otto

25 Steinhaus and one from Marvin Rogers.

1    THE COURT:  If they could come forward one at a

2  time.  You may proceed.

3    MS. LAMEES SHAKIR ABDUL-KAFI:  Honorable Judge

4  Laughrey:  On behalf of my mother and four brothers, I'm here

5  to talk about my father, the man behind us being a family of

6  educators.  You can come to our house at any time and see each

7  one of our family members busy in the pursuit of knowledge or

8  working on how to convey this knowledge to others.

9    I have a BS in Elementary Education from the

10  University of Missouri and an MS in Curriculum and Instruction

11  from Stephens College.  I am currently finishing up my fourth

12  year as a full-time elementary school teacher and giving

13  serious thought to pursuing a Ph.D. in the near future.  I owe

14  my career path to the influence of my father's wisdom, love,

15  and motivation through the years.  He brought me up to be a

16  kind, gentle, and successful teacher.  I always bring examples

17  from my father to teach my young students the great morals and

18  characters of a good citizen.

19    My father greatly supported my mother as she started

20  and finished her Master's Degree in Foreign Language

21  instruction.  He has been talking with her to pursue her Ph.D.

22  also.

23    My first brother Owais graduated with a double major

24  last year and is about to finish his Master's Degree because of

25  the continued encouragement and support from my father.  He is

currently searching for a good Ph.D. program so as to pursue an academic position in his field.

My second brother, Salahodeen, was accepted to and is attending Stanford University in California because of his high achievements in high school, but more importantly because of the close guidance from my father. Even though Salahodeen is 2,000 miles away, they call each other almost every day just to see how things are going. Salahodeen is graduating next month, and it is the hope of my whole family to attend his graduation together. He will also continue his studies in pursuit of a Master's Degree after he graduates.

My third brother, Husam, will graduate from high school this weekend and has decided to study at Wesleyan University in Connecticut, one of the top liberal arts universities in the nation. My father was always supportive to Husam throughout his life as he charted out his many options and made his final decision among the many top schools that accepted him for admission.

As for my youngest brother, Abdul-Rahman, he is still in junior high school and is very close to my father every day of his life. He talks with my dad about his day, his studies, and he loves to ask questions about life. My father is always very patient with him and answers his concerns to his point of satisfaction. He talks to him about his school environment and how he has to put up with some of his peers

calling him a terrorist.  My father has to counsel him, comfort him, and work with the school to improve the environment.  My father has been doing this with each one of us as we all went through the same phase of peer ignorance and prejudice. Abdul-Rahman is hoping to continue this close relationship with my dad as he is still in need of his love, wisdom, and guidance as he chooses his classes, colleges, and educational path.  I always hear my father saying that his top priority now is my youngest brother, Abdul-Rahman.  My father has already planted four seeds for good citizens and has only one left to go.

Your Honor, aside from my family, my father has been a great influence on many members of our community.  A colleague of mine told me she did not know which career path to take while she was in her second year in college.  One day she listened to my father speaking at the local mosque as he frequently does on the importance of education and how it is important for young graduates to think of a career in education.  His theme was "Teaching the Young Generation is Highly Rewarding."  My colleague was moved by his reasoning and finally realized that being a teacher was the most noble profession she could choose.  That incident happened about ten years ago, but she did not convey it to me until two years ago, when my dad was giving us a lecture on how to be a successful and effective Muslim teacher.  My father was very happy to hear that he was a part of a good decision that young lady took.

She is a great teacher today and has taken my father's words to heart as she deals with her students each day.

My father is known in the community as a source to answer the contemporary questions Muslims in America face every day. In fact, for many years now, he has been giving a weekly lecture on Friday nights on how to enjoy living Islam while being a good U.S. citizen. His series of lectures is called "Islam, A Way of Life." My father is also very well-respected in the community at large. Individuals and families trust him with their personal issues and difficulties. He spends a lot of time listening and engaging with the community.

Your Honor, the rest of my siblings and I have yet to meet my extended family in Iraq. Both my grandfathers passed away without us meeting them. It has been my dream since I was a little child to meet my grandmother, that great lady who raised and gifted my dad to us. I want to meet his eight sisters, two brothers, and the rest of his and my mother's extended family that he tells me could reach up to 400 people.

Growing up, I was deprived of my relationship with my grandparents, aunts, and uncles. I was never able to hug them tightly and feel their warm hearts. I do not plan on repeating that for my own children. I want them to grow up around the warmth and wisdom of their grandfather.

Your Honor, my family has gone through so much

1  hardship financially and socially these past six years.  Many

2  people, including some neighbors and media organizations,

3  labeled us as terrorists.  We have tasted enough of this

4  ignorance and prejudgment.  My father is well-known for

5  promoting peace and tolerance in the society.

6          Your Honor, today could be the day to put an end to

7  my 60-year-old father's constant struggle to survive for his

8  family's needs.  Please allow my dad to serve freely all of us.

9  Thank you very much for giving me this opportunity.

10         MR. HOBBS:  Thank you, Judge.  Mr. Steinhaus?

11         MR. OTTO STEINHAUS:  Your Honor, Judge Laughrey, I

12  know you read my letter regarding my relationship with Dr.

13  Hamoodi, so I won't repeat myself today.  I just simply wanted

14  to be here to let you know my relationship with him and being

15  here in person regarding my thoughts regarding his sentence.

16         I have got great respect for Dr. Hamoodi.  And while

17  I understand that laws were broken, I also know that he has

18  accepted responsibility.  I know that his love and compassion

19  for his family were the driving forces behind his conduct and

20  actions.  He is an honorable man who has been and will be a

21  very productive member of our society.  He has so much insight

22  to offer those who desire to better understand the Islamic

23  faith and to achieve peace.  I'm honored to be here today,

24  before you today to ask for leniency for Dr. Hamoodi.  Thank

25  you.

1          THE COURT:  Thank you.

2          MR. HOBBS:  Our final witness, Your Honor, is Marvin

3    Rogers.

4          MR. MARVIN ROGERS:  Judge Laughrey, thank you for

5    the opportunity to speak on behalf of my friend, Dr. Shakir

6    Hamoodi.  I will try not to repeat the contents of my letter

7    that was written to you earlier.  Dr. Hamoodi is a very

8    well-respected member of our community in Columbia, Missouri.

9    He most assuredly has my respect.  We have spent countless

10   hours talking about ways to promote understanding and peace

11   between Americans and the Middle East.  He has spoken often to

12   students in my classes about the Iraq conflict and the Iraqi

13   people.  He is devoted to his family in Iraq, just as he is to

14   American society.  I respectfully stand before you today asking

15   for leniency for Dr. Shakir Hamoodi.  Thank you very much.

16          THE COURT:  Yes, Mr. Hobbs.

17          MR. HOBBS:  Thank you, Judge.  Without repeating

18   what has been made a record of in chambers as to the departure

19   request, I just want to reiterate for Mr. Hamoodi's benefit to

20   you that he has sincerely accepted responsibility.  He has

21   engaged through counsel personally in four different proffer

22   sessions.  He has helped detail handwriting, and he's helped

23   explain and diagram how the activity occurred, he's described

24   that both as to his own wrongdoing here in the Western District

25   of Missouri, as well as beyond, and I believe that he is indeed

1  someone who has substantially assisted in the investigation as

2  5K1.1 envisions.

3         As the threshold, as the court knows, with the

4  guidelines being important but advisory, the court would

5  naturally want to look to that to determine at least in part

6  what concession if any to give to him.  But in addition, Judge,

7  there are some other factors that I think bear speaking about.

8         In the sentencing memorandum, for example, we also

9  referenced a commentary to the guideline 2M5.1 that speaks in

10  terms of if there are factors that are in extreme form a

11  departure from the guidelines may be warranted.

12         Now, if you read it in context, it appears to be

13  speaking, frankly, in terms of an upward departure when they

14  give the examples, but I think that verbiage is applicable here

15  in terms of an additional downward departure because there is

16  no doubt if one looks at the PSI that the intended recipients

17  of the moneys were relatives and friends for needed services

18  and charitable acts.  There was no effort to assist the

19  government.  I'm not offering that as a defense or legal

20  justification or excuse, he accepts responsibility for his

21  wrongdoing and has pled guilty, but I do think that's an

22  additional factor.

23         In addition to the guidelines, though, Judge, under

24  18 U.S.C. 3553, as this court well knows, one of the overriding

25  objectives is to fashion a sentence that's sufficient but not

1  greater than necessary to meet various sentencing goals.  And

2  in that regard, they set out a set of criteria, and I want to

3  speak to that, if I could.

4        First, as to the characteristics of Mr. Hamoodi and

5  what he has shown, in the PSI we have detailed out a series of

6  activities that he has been involved with on page 8 of the

7  defendant's sentencing memorandum.  He was formerly a Peace

8  Corps volunteer.  Mr. Hamoodi has come to the aid of the St.

9  Francis House for the homeless and a group known as Loaves and

10 Fishes soup kitchen.

11       He's been a frequent guest speaker, as his daughter

12 has talked about, to numerous diverse groups as an advocate of

13 peace and understanding between Muslims and other faiths.  He's

14 also among the original founders of the Columbia Faith and

15 Education Collaborative for Advancing a Culture of Peace.

16       And he's involved himself in community rallies.

17 Immediately after the September 11th tragedy, as an example,

18 the Columbia Public School wanted an expert on Islam to talk to

19 the faculty and students, and he was invited to do that.  And

20 on September 15th, only four days after that most tragic event,

21 he met with five groups of students and staff in an auditorium

22 totaling more than 1,000 people and gave them an overview of

23 what Islam is and what it is not, answered questions, and made

24 himself available for future questions.

25       That also led to a reference in Mr. Steinhaus's full

letter that's before the court where he had led a summer continuing education session of six classes of understanding Islamic culture for teachers at no cost.

Similarly, Richard Pruitt who authored a letter to the court details as an instructor for Columbia College his familiarity with Mr. Hamoodi. He gives examples of being involved in educating college students and, in fact, mentions in his letter that he has hosted eleven times for the World Religion class there at Columbia College.

The letters speak volumes about the background that Shakir Hamoodi has, and that is an appropriate factor under 18 U.S.C. 3553. I think it's also telling, Judge, of the timeline of what we have before us. Because you have more than mere words or, if you will, hollow promises as to his ability to follow any conditions of release or probation the court might deem appropriate. You have actual history.

We know, for example, that in the charging documents the last transfer of funds involved was in 2003, our firm was retained pre-indictment in December 2006. There was proffers and discussion with counsel and prior counsel. He entered his plea in December 2009, and he's now here before you. Several years that show that he is capable of comporting his conduct to the law and, to my knowledge, there's not been one violation of any condition of bond or pretrial release.

In addition, if you look at the presentence report,

1    it details his education, the fact that he's been a naturalized

2    citizen.  He's got a Ph.D. in nuclear engineering from the

3    University of Missouri.  He taught for a period of time at the

4    University of Missouri.  He has run a small store called World

5    Harvest there on Nifong and Providence to try to make a living.

6    It's been difficult in these times, but he has shown by his

7    conduct that he's truly trying to be productive.

8         Now, it doesn't make lawful sort of taking the law

9    in his own hands, if you will, and assisting those that he

10   perceives to be in need to get funds, but I do think that it is

11   a mitigator if one looks at the motives as to what he was

12   trying to achieve.  I also think it's a mitigator if you look

13   at his characteristics, his background when one tries to

14   fashion a sentence that's sufficient but not greater than

15   necessary.

16        This is truly an individual where a felony alone

17   sends a deterrent, a loud message.  Mr. Hamoodi has faithfully

18   come to every meeting requested, he has taken this to heart, he

19   has detailed things involving even his own relatives'

20   involvement.  He has answered every question asked of him.  And

21   I believe, Judge, that if you were to see fit to fashion a

22   probationary sentence that you would not be disappointed.

23        I also, while it's hard to compare cases because

24   cases are different and have differing facts, this was not a

25   group that was an organization that was ever on a specially

1  designated list.

2          It's my understanding that we have looked in the
3  annals, Judge, to find like cases.  These types of prosecutions
4  at least in this part of the country are rare.  The Sentencing
5  Commission reports that for 2011, there are four cases where
6  2M5.1 was the primary guideline and seven cases in which it was
7  any guideline.  And in fact, in the past ten years in the
8  District of Kansas there was only one case that was indicted in
9  December of 2011, Adil Elijalty, that's E-L-I-J-A-L-T-Y, that I
10 believe is still pending.

11         The most similar case that this court knows better
12 than anyone was the IARA case.  While it did involve a
13 different organization, there were at least a couple of
14 individuals in that case that received a probationary sentence.
15 I think under 3553(a)(6), to the extent we can gather
16 information as to proportionality that that bears some
17 relevance.

18         The other point that probably is made most
19 eloquently by Mr. Hamoodi's daughter is that this is a family
20 that's trying to be and has been productive.  When you look at
21 what they have done, it's amazing.  Mr. Hamoodi himself is
22 going to be 60, I think, July 1st.  I've talked to you about
23 what he does.  His wife here is in support, 46, a BS in Islamic
24 law, MS, teaching foreign languages, both at Concordia College;
25 currently a teacher at the Islamic school in Columbia.  Lamees

1  has talked about her own background as an elementary education

2  teacher at the Islamic school.

3        The other sons, ages 23, 21, 18, and 14, those are

4  sons or daughters that any of us would be proud of, and I think

5  that Mr. Hamoodi has helped contribute to that. But I also

6  think that this is a difficult day for them because of why

7  we're here. But the whole family has taken this to heart

8  because of the leadership of Mr. Hamoodi. He has not made

9  excuses, he's not falsely denied, he's not engaged in

10 protestations that were false in proffers. He's accepted his

11 responsibility, avoided a lengthy trial; and whatever the court

12 fashions in terms of the sentence, he will accept, he will not

13 grumble about it, he will accept it, and he will perform it.

14        I am asking you in your discretion to fashion a

15 sentence of probation with whatever conditions that you believe

16 to be appropriate, and I have no doubt that he will follow

17 them. I sometimes hesitate to say that about a person, but

18 this is not one of those instances. There are other matters

19 that we've talked about in terms of fashioning a sentence that

20 reflect the seriousness of the offense, afford adequate

21 deterrence, protect the public from further crimes, provide the

22 defendant with needed educational and vocational training. All

23 of these factors I think we've detailed in our sentencing

24 papers.

25        But what I wanted to try to bring to you with the

1  utmost sincerity is that I believe that Mr. Hamoodi will take

2  this as an opportunity to continue to bring people together,

3  which is really what needs to happen in any sentencing, but I

4  think he's already done that and he'll continue to do that.

5          So I ask that you please consider probation.  Any

6  form of incarceration is going to continue to be more than

7  necessary because the -- he won't be eligible for a camp as an

8  example because of the nature of the guideline.  And so while

9  he'll endure it and do whatever the Bureau tells him in terms

10  of designation, that's unneeded, it's unnecessary, and it would

11  be greater than necessary in my respectful opinion.  Thank you,

12  Judge.

13          THE COURT:  Do you want to respond before I have the

14  defendant speak?

15          MR. HEENAN:  Just very briefly, Your Honor.

16  Obviously, I can't speak to the personal characteristics of Mr.

17  Hamoodi the way that Mr. Hobbs can, and obviously there's a

18  fair amount of family and members of the community out here to

19  support Mr. Hamoodi, and I think that's commendable and I do

20  think that speaks to his character.  I just want to speak very,

21  very briefly, though, on the nature of the offense here because

22  I think it's important just to raise the issue with the court

23  and, frankly, for people here in the audience today.

24          The charged conduct involved a conspiracy to violate

25  the International Emergency Economic Powers Act.  Essentially,

1    it's the Iraqi sanctions is the easier way to say it.  What the
2    Iraqi sanctions were, they ended in May of 2003 after Saddam
3    Hussein was deposed, but the sanctions were in effect for many
4    years before Saddam Hussein was deposed as the leader of Iraq.

5            And the government, in terms of the countries it
6    selects to be embargoed or to have sanctions imposed on, it's
7    not countries that the United States has a policy disagreement
8    with, it's countries that we are fundamentally at odds with.
9    Presently there are sanctions against the government of Iran,
10   the government of Syria, under Moammar Gadhafi, the government
11   of Libya, sanctions have been imposed.

12           It's serious business and the conduct here that Mr.
13   Hamoodi has pled guilty to and is now preparing before Your
14   Honor to be sentenced on involves a conspiracy to violate the
15   prohibitions in the Iraqi sanctions, and it was a conspiracy
16   that went for a nine-year period of time.  During that period,
17   Mr. Hamoodi conspired with others to get cash into Iraq.

18           Now, there is a way to get around sanctions.  You
19   can get a license from the Treasury Department, but the
20   Treasury Department will take a very close look and scrutinize
21   whatever request is made.  OFAC, the Office of Foreign Asset
22   Control, is the entity within the Treasury Department that
23   decides whether to grant a license to somebody who would like
24   to get goods or other materials into a country that's under
25   sanctions, and Mr. Hamoodi did not obtain a license from the

1  Office of Foreign Asset Control.

2         Now, why is that a problem?  And I know Mr. Hobbs I

3  believe in one of his moving papers had suggested or indicated

4  that the money that did go into Iraq went to charity or to

5  family or various benign things.

6         And the problem is that during the Saddam Hussein

7  era, it was a black box, we don't know where that money

8  necessarily went.  I will accept at face value that maybe it

9  did go on some occasions to charitable purposes or to family

10 members; but even then a government like the Saddam Hussein

11 government could tax cash or charitable goods that go into a

12 country.  That's why OFAC wants to keep watch of what is sent

13 in and wants to grant licenses is to make sure it's not cash

14 that could easily be taxed by someone who is going to help

15 build up a war machine for a government that is under

16 sanctions.

17        So I would just -- again, Mr. Hobbs has raised a lot

18 of important issues for the court to consider under Section

19 3553(a), but I do just want to also raise the issue that the

20 crime here is a serious crime.  It's easy to say it's all in

21 the rear-view mirror, the sanctions have expired, May of 2003,

22 they have been down, they've been down for several years.  But

23 it is still a serious crime, and the larger United States

24 government interests in having sanctions and, moreover, having

25 people in the United States, citizens abide by the requirements

of Treasury and not violate those sanctions is an important
thing that the United States would seek to promote.

And I think that a sentence in this case along the
lines of what the government is recommending, which is 48
months, would be a proper and appropriate sentence to
accomplish those goals. So with that I would submit, Your
Honor.

THE COURT: Mr. Hobbs?

MR. HOBBS: May I make a brief reply, Your Honor?

THE COURT: You may.

MR. HOBBS: Sentencing arguments are difficult
because I don't want to ever confuse an argument with defense
of the conduct. We're not defending, we're not excusing or
justifying the conduct. He pled guilty. We know that it's
serious, the felony is indeed serious.

The secondary question, though, is, well, what is
the appropriate sentence? And I do think it is a mitigator,
Judge. When you look at the sentencing memorandum on page 9,
for example, we talk about eight of the defendant's sisters,
two of the defendant's brothers and their families, his
83-year-old blind mother were recipients of the financial
donations. Other acquaintances who requested assistance from
Mr. Hamoodi to forward funds also had the same focus and intent
to help their family members in need.

Now, in the proffer sessions, one of the reasons we

1  know that that happened is that there was never a complaint

2  back, and that is to say the intended recipients of this money

3  never called Shakir and said what's happened to it, so we have

4  good cause to believe that his intent was, in fact, effective.

5  That doesn't make it lawful, but it certainly distinguishes it

6  from other types of conduct.

7          And we understand that one of the reasons that the

8  law exists is to appropriately track that and to make sure that

9  there is a license, and regrettably Mr. Hamoodi did not have

10  that.  But in the PSI itself which is unobjected to by the

11  government, there's absolutely not a scintilla of evidence

12  before the court that any of this money went to something other

13  than an intended recipient.  And, in fact, paragraph 17 says,

14  (quoted as read) "Hamoodi considers sums received from donor

15  families as being for humanitarian purposes, but the government

16  points out that these funds were not humanitarian --

17          COURT REPORTER:  I'm sorry, Mr. Hobbs, if you could

18  please speak up.

19          MR. HOBBS:  Sure.  (Quoted as read.)  "Hamoodi

20  considers funds received by the donor families as being for

21  humanitarian purposes, but the government points out these

22  funds are not humanitarian in the traditional sense in that

23  they did not go through the proper humanitarian channels."

24          But there's no indication that it went to anybody

25  else, yet we know through the conversations that Shakir had

1  that we believe that the actual intended recipients received

2  the funds.

3          Again, it doesn't justify it.  Mr. Heenan is

4  absolutely right, it's a felony, and he's pled guilty to that.

5  But I do think that that is a mitigator, and I don't believe

6  that a sentence anywhere near 48 months is appropriate because

7  that's far greater than necessary to meet the sentencing goals.

8          The government's argument would suggest that the

9  offense conduct and the cooperation are the only two factors in

10  a federal sentencing, yet 18 U.S.C. 3553(a) has a litany of

11  others, and not one of those other factors is less important

12  than the offense conduct.  And they're all listed together,

13  they're all supposed to be looked at together to arrive at a

14  sentence that's sufficient but not greater than necessary to

15  achieve the goals, the goals of deterrence, the goals that show

16  that it's serious, the goals that recognize the characteristics

17  of the offender.

18          And so I appreciate the government's argument and,

19  as always, it's a pleasure to work with Mr. Gonzalez and in

20  this case his colleague, Mr. Heenan and his predecessors, but

21  we respectfully disagree, that the recommendation of the

22  government is simply too severe in this case under these

23  particular circumstances.

24          THE COURT:  Mr. Hamoodi, I'd like to -- Dr. Hamoodi,

25  I would like to give you an opportunity to speak.

1          THE DEFENDANT:  Thank you, Your Honor.  Your Honor,
2    I am sorry for my conduct.  I accept responsibility and have
3    pled guilty.  I acknowledge that I sent funds to my family and
4    the families of my friends in Iraq between 1991 and 2003 when
5    the United Nations sanctions were in place.  I made the
6    mistake, and I'm deeply sorry.  I assume full responsibility
7    for violating the law of the sanctions, and I sincerely
8    apologize for that.

9          All the money I sent was used by my family and the
10   families of my friends.  In fact, when the government searched
11   my house, they found letters from me to my cousin in Iraq
12   accounting for every dollar I sent, every dollar, and I mean
13   it.  And a letter from my cousin back to me dated in the
14   regular mail accounting for every dollar I sent him.  So there
15   was no dollar that went to Iraq government.

16         Why I sent the money, I sent the money in response
17   to the pleas for help from my immediate family.  For example,
18   my sister-in-law lost a child because she could not afford $10
19   worth of antibiotics.  So she had infection in her pregnancy,
20   and she lost the baby.  The baby could have been 19 years old
21   now.  This is one of many heart-breaking appeals I found myself
22   emotionally occupied with.

23         My family and I have suffered terribly, Your Honor,
24   because of the negative publicity.  My children were called
25   terrorists, our neighbors have kept a distance, and my business

1   has suffered dearly.

2           My 83-year-old mother who lives in Iraq is blind and

3   sick.  I would dearly like to say good-bye to her before she

4   departs this world.

5           Your Honor, it is my hope that you put into

6   consideration that my family and I have already paid a heavy

7   price.  Your Honor, I have been living in Columbia, Missouri,

8   for the last 27 years, longer than I had lived in my childhood

9   land.  I love this country where my five children were born,

10  nourished, guided, and educated.  I love the values our

11  Constitution stands for.  I love our community in Columbia.

12          In fact, I have actively worked with the faith

13  community and other groups in town and the State of Missouri

14  and across our nation to further understanding and tolerance

15  among all religious communities and between our nation and the

16  Muslim world.  I give hundreds of lectures to school children,

17  colleges students, faculty, houses of worship, and civic

18  groups.  My message has always been we have more in common than

19  what we tend to believe.

20          I co-founded and was the first principal of the

21  Islamic School of Central Missouri where my five children were

22  taught how to be successful children, citizens.  I trained

23  hundreds of graduate students on how to become better nuclear

24  engineers and researchers.

25          Your Honor, if you will allow me to continue to

1  enjoy my role in society as a voice for tolerance and peaceful

2  coexistence among religious groups, I promise that you will

3  never see me here again in court.  I have, indeed, learned my

4  lesson, unfortunately the hard way.  I should have known

5  better.  I am sorry.  Thank you.

6           THE COURT:  I'm going to take a brief recess.

7           (A recess was taken from 3:39 p.m. to 3:56 p.m.)

8           THE COURT:  First of all, I'm going to impose

9  sentence and then I'll explain my sentence to the parties.

10          Pursuant to the Sentencing Reform Act of 1984, it is

11  the judgment of the court that the defendant, Dr. Shakir

12  Hamoodi, is hereby committed to the custody of the Bureau of

13  Prisons for 36 months on this one-count Information.  Upon

14  release from imprisonment, the defendant shall be placed on

15  supervised release for two years.

16          Since the court finds that the defendant does not

17  have the ability to pay a fine, the fine is waived.

18          It is further ordered that the defendant shall pay

19  to the United States a special assessment of $100, which is due

20  immediately.

21          Mandatory drug testing is waived pursuant to 18

22  U.S.C. 3583.

23          While on supervised release, the defendant shall

24  comply with the mandatory and standard conditions adopted by

25  the court.  In addition, the defendant shall comply with the

1  following special conditions.

2          If not deported, the defendant shall report to the
3  probation office within 72 hours.  If deported, the defendant
4  shall not reenter the United States illegally.  If granted
5  permission to legally reenter the United States or if the
6  defendant illegally reenters the United States, the defendant
7  shall report to the probation office within 72 hours of entry
8  and shall continue to report as directed for the remainder of
9  any unexpired term of supervision.

10          The defendant shall not be involved in any capacity
11  with any business, charity, or organization which solicits
12  funds that are distributed outside of the United States or who
13  have business associations outside of the United States without
14  prior approval of the probation office.

15          The defendant shall submit his person, residence,
16  office, or vehicle to a search conducted by a U.S. probation
17  officer at a reasonable time and in a reasonable manner based
18  upon reasonable suspicion of contraband or evidence of a
19  violation of a condition of release.  Failure to submit to a
20  search may be grounds for revocation, and you must warn any
21  other residents that the premises may be subject to searches
22  pursuant to this conviction.

23          And I need to inform you that you have the right to
24  appeal my decision.  You have 14 days in which to file an
25  appeal.  If you fail to file it in 14 days, you forever give up

1   your right to appeal.  Do you understand that?

2           THE DEFENDANT:  Yes.

3           THE COURT:  First of all, I have taken into account

4   the 3553 factors which are required for me to consider, and I

5   have given substantial credit for the outstanding leadership of

6   Dr. Hamoodi in Columbia, and particularly in the Islamic

7   community.  He obviously has a model family, a lovely family,

8   lovely children, very productive, and I am sure it is largely

9   as a result of your leadership in the family.

10          But I have also had to take into account what you

11  did.  And I respectfully disagree with Mr. Hobbs, it is not a

12  mechanical process that we look at the defendant and we look at

13  what he did and they weigh exactly the same.  It is all to be

14  taken into account under the unique circumstances of the case.

15          In this matter, you disagreed with the law, and you

16  decided not to comply with the law.  That does not show respect

17  for the rule of law, which is the foundation of this country.

18  And that was particularly of concern because you had a way to

19  achieve humanitarian goals here.  You could have gotten a

20  license and sent in medicine, you could have gotten a license

21  and sent in food, but you chose not to do that.

22          The law did not permit you to send in money.  Even

23  with the license, it's not permitted because there is no way

24  for the government to know where the money actually ended up.

25  Anybody can write a letter and send it and say all of the money

1   went to buy medicine, all of the money went to buy food.  There

2   is no way when it comes to money to verify that one way or the

3   other.  It is like feathers being blown in the wind, and you

4   can never keep track of where those dollars in fact went.

5          And it is of particular concern to me that this was

6   a nine-year conspiracy.  This was not one time where you

7   received a request from a family member and you were moved by

8   emotion one time to send in some support.  It was consistent

9   behavior over a long period of time.  It was a lot of money,

10  over $200,000.  Most families cannot give that kind of money

11  under the best of circumstances to family members.  But it is a

12  lot of money that was sent in in violation of the sanctions.

13         Mr. Hobbs has also raised the issue of uniformity

14  which is also very important in our justice system that people

15  with similar crimes and similar backgrounds are treated

16  similarly, regardless of which judge imposes the sentence or at

17  what time that sentence is imposed.

18         So in preparation for this proceeding, I did go back

19  and I looked at the sentencing reports for all of the IARA

20  defendants, who I handled as well.  And I read the transcripts

21  of some of the sentencing hearings.  I followed up to make sure

22  that I understood why it was that I sentenced those defendants

23  differently, some of them differently than I am sentencing Dr.

24  Hamoodi.

25         And there are differences.  Mr. Mustafa, who was one

of the defendants, sent $1,000 or less, one time in support, in
violation of IEEPA; and Mr. Bagegni, there's undisputed
evidence in the record that he was told that there wasn't a
license, but then he was told by the leader of the charitable
organization that there was.  He wasn't the leader, he was
following and helping other people.

        The defendant here was the leader of this, or at
least one of the leaders of this conspiracy.  This is not a
situation where he was just part of a large organization and
maybe didn't fully appreciate the consequences of his conduct.
He did know the consequences of his conduct, so I do not
believe that he is entitled to be treated in the same way.

        And finally, of course, I have taken into account
the cooperation that has been provided in this matter, and I
have to weigh that against the weight of the conduct.  The
cooperation appears to be fairly light based upon everything
that I have heard, that it is of small benefit; some benefit,
but of small benefit to the government under these
circumstances.

        So I have departed down from 57 months to 36 months
to take into account both the cooperation and the outstanding
leadership that Dr. Hamoodi has provided in the city of
Columbia over the years.

        Let's talk for a minute about -- I assume that you
want voluntary surrender?

1          MR. HOBBS:  Yes, Judge, if I could be heard on that.

2          THE COURT:  Yes, you may.

3          MR. HOBBS:  I'm compelled to say, first, Judge, that

4   while I'm disappointed, it's always a pleasure to appear before

5   you because I know you, even in cases where we disagree, give

6   reason and thought to that.  And for that, I appreciate your

7   time.

8          THE COURT:  And I hope you know how much I

9   appreciate you appearing before me because you're such an

10  outstanding lawyer.

11         MR. HOBBS:  Thank you, Judge.  Mr. Hamoodi was

12  advising me at the recess that Ramadan fasting for this year is

13  to occur approximately July 20th to August 20th, and I'm hoping

14  that the court would allow a slightly extended period of

15  surrender sometime after August 20th.  That's the first

16  request.  It's not a whole lot different than normal, but maybe

17  30 days or so.

18         The second issue, Judge, I don't know -- and we

19  tracked in detail some of the briefing that you've referenced.

20  And one of the issues that got our attention was the pleading

21  that was filed in the Siljander matter as to the designated

22  facility.  There was a motion filed because of what was

23  discovered.

24         I wanted to share with you, my legal assistant

25  recently called the office of the Bureau of Prisons and spoke

1   with a lady who identified herself as Lori to inquire as to

2   whether Mr. Hamoodi's guilty plea would preclude him from

3   placement in a prison camp if he were to receive a custody

4   sentence.  And she indicated to Dru that Mr. Hamoodi would

5   likely receive a PSF score of greatest severity, which would

6   raise him from a minimum to low, which may make him ineligible

7   for placement in a camp.

8           We certainly understand that the Bureau of Prisons

9   makes that ultimate determination.  I would like to explore

10  that further, see if there's any language or recommendation

11  that might at least have some positive effect upon the Bureau

12  and then submit that recommendation to you in a letter or a

13  pleading.  Obviously, we're hoping that he's within 500 miles

14  of Columbia, which is typically what they, the Bureau of

15  Prisons tries to do to allow for mainstreaming and contact.

16          But we would like, if we could, Judge, to research

17  that further, and if some sort of language might help him get

18  placement at a camp, we recognize you may not want to do that,

19  but we would like to at least submit some proposed

20  recommendation of language consistent with what we're learning.

21          It may be that nothing helps, they'll just do what

22  they do, which is sometimes the case, but it could be that

23  perhaps some wording, if the court thought it was appropriate,

24  might maximize his chance at a lower security facility.  And we

25  could have that, an answer to you by Monday.  I'll be out of

1 town a good part of Thursday and Friday going to a graduation,

2 but we'll get on this immediately and submit that first to Tony

3 and Mr. Heenan and then to you.

4 　　　　　THE COURT:  Let's turn to the latter topic first.

5 Do you have any objection to me recommending a camp facility?

6 　　　　　MR. HEENAN:  Your Honor, I don't have an objection,

7 and I can't speak for the Bureau of Prisons on how to handle

8 this, but --

9 　　　　　THE COURT:  Nobody can speak for them.

10 　　　　　MR. HEENAN:  But with regard to the request, we have

11 no objection.

12 　　　　　THE COURT:  Okay.  I don't know if you're looking

13 for magic language.  I have not found any magic language that

14 works with the Bureau of Prisons, but, you know, I am happy to

15 recommend the defendant for the prison camp.  He's an ideal

16 candidate for the prison camp, and I think that would be very

17 appropriate.

18 　　　　　MR. HOBBS:  If the court would do that; and if we do

19 find that some additional wording might be helpful, we'll

20 contact the court by Monday.

21 　　　　　THE COURT:  All right.  And I will recommend within

22 500 miles of -- or as close as possible but no more than 500

23 miles from Columbia, Missouri, so the defendant may maintain

24 contact with his family during his period of incarceration.

25 　　　　　Now, as to the self-surrender, do you have any

1  objection to after August 20th?

2       MR. HEENAN:  No objection, Your Honor.  I believe

3  Mr. Hamoodi has abided by all requirements while he's been out

4  on bail, and he's been out on bail for a while prior to these

5  proceedings.  So no objection to additional time that's being

6  requested.

7       THE COURT:  Okay.  What's the first business day

8  after August 20th?

9       COURTROOM DEPUTY:  The first business day after

10  August 20th is Tuesday, the 21st.

11       THE COURT:  Report to the facility designated by the

12  Bureau of Prisons by August 21st.  Is that -- you know, that

13  might be a problem because, because the problem of the

14  finishing of Ramadan and then time to get to the facility.  So

15  is the 22nd --

16       MR. HOBBS:  Would the court consider the 28th or

17  29th, one week after the fasting?

18       THE COURT:  Sure.  28th.

19       MR. HOBBS:  All right.

20       THE COURT:  All right.  I think that takes care of

21  everything.  Anything further for the government?

22       MR. HEENAN:  Nothing further, Your Honor.

23       THE COURT:  Or for the defendant?

24       MR. HOBBS:  No, Judge.

25       THE COURT:  All right.  Thanks to both of you.

1          MR. HEENAN:  Your Honor, was there an issue with

2    unsealing items on record?

3          THE COURT:  I have already gone ahead and unsealed

4    the record, so the record is now unsealed.  Except as to the

5    hearing we had in camera.

6          (Hearing adjourned.)

7                          - - -

8                          - - -

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          <u>CERTIFICATE</u>

2          I certify that the foregoing is a correct transcript

3   from the record of proceedings in the above-entitled matter.

4

5

6    June 9, 2012

7                              /s/_____
                               Kathleen M. Wirt, RDR, CRR
8                              U.S. Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25